UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.:

04 11678 WGY

| | |
|---|---|
| Paul Antonellis, Jr.<br>Plaintiff<br><br>v.<br><br>Town of Salisbury and<br>Timothy McInerney,<br>Defendants | COMPLAINT |

## JURISDICTION

This matter is properly before this Court in accordance with Title VII of the Civil Rights Act of 1964 and/or the Americans with Disabilities Act (ADA). A Notice of Right to Sue was issued by the United States Equal Employment Opportunity Commission and was mailed to the Plaintiff in this action on May 3, 2004. This Court also has pendent jurisdiction to hear the state claims advanced.

## PARTIES

1. The plaintiff, Paul Antonellis, Jr. ("Antonellis"), is a resident of the State of New Hampshire. At all times material hereto, Antonellis was employed as Fire Chief by the Town of Salisbury, Massachusetts.

2. The defendant, Town of Salisbury ("Town"), is a Massachusetts municipality located in Salisbury, Essex County, Massachusetts and is operating under a lawful charter.

3. The defendant, Timothy McInerney ("McInerney") is alleged and believed to be a resident of the Commonwealth of Massachusetts. At all times material hereto, McInerney was employed by the Town as Town Manager.

## COMMON FACTS

4. In the Summer of 2000, Antonellis responded to a fatality at Salisbury Beach of a seven-year-old child. Shortly thereafter, Antonellis began experiencing transient anxiety symptoms surrounding this incident which, according to his doctor, he managed well until around May, 2001, when an exacerbation of his condition presented.

5. Antonellis continued to perform his duties and responsibilities as Fire Chief until on or about July, 2001, when, following a recommendation by his physician after diagnosing him with Post-traumatic Stress Disorder, he was placed on disability leave pursuant to Massachusetts General Laws c. 41 § 111F.

6. Instead of supporting Antonellis in his efforts to recover from the emotional trauma he sustained in the performance of his duties, the Town engaged in conduct which can only be described as legally irrational and shocking to the conscience.

7. More specifically, the Town initially questioned whether Antonellis was actually disabled, although two (2) competent physicians had determined the status of his condition.

8. Unbelievably, the Town requested that Antonellis undergo a third evaluation to determine his fitness for duty. No other similarly situated Town employee had ever been requested to undergo a second or third disability evaluation.

9. Nevertheless, Antonellis complied and the physician selected by the Town also concurred that Antonellis suffered from Post-Traumatic Stress Disorder resulting from a job-related injury.

10. Thereafter, the Town proceeded to engage in a series of conduct which only exacerbated Antonellis' disability. More specifically, said conduct included, but was not limited to: first classifying his disability as some sort of "dual purpose leave"; continually questioning the legitimacy of his disability; subsequently reclassifying his disability as family medical leave; refusing to provide mandated medication reimbursement payments; refusing to pay him timely the compensation due for previous services rendered; and failing to return items of personal property during his period of disability.

11. The Town's conduct became so egregious that Antonellis was forced to retain legal counsel during this time period for the purpose of protecting his rights.

12. Although he had been placed on disability leave pursuant to Massachusetts General Laws c. 41 § 111F, the Town also sought to force Antonellis to take early, involuntary retirement and contacted the Essex Regional Retirement Board in May, 2002, asserting Antonellis was not capable of performing the essential functions of his position.

13. Believing at this juncture that he could eventually return to work, Antonellis opposed involuntary retirement. His physician had opined that he could return to transitional light duty work but the Town did not want him to.

14. On July 24, 2002, the Retirement Board found in favor of Antonellis and determined that he was capable of returning to work on a light duty basis. Immediately thereafter, the Town undertook drastic measures in attempt to preclude Antonellis from returning to work by scheduling a disciplinary hearing concerning charges allegedly levied by disgruntled employees from offenses that occurred more than one year prior.

15. Antonellis never had any disciplinary action taken against him in over seventeen (17) years in fire service employment positions. In fact, Antonellis had received several pay increases for outstanding job performance amounting to over $10,000 during his three (3) years with the Town.

16. The Town first notified Antonellis by letter from its former Manager, McInerney, dated August 12, 2002, of its intent to conduct a pre-disciplinary hearing. This August 12, 2002, letter set forth a detailed listing of Antonellis' alleged, unprofessional conduct.

17. McInerney supposedly procured this information concerning Antonellis' wrongful conduct from a confidential report prepared for him by the Town's legal counsel, Attorney Elizabeth Corbo. However, Attorney Corbo's report discussing the results of her investigation was not even prepared and submitted until August 13, 2002.

18. A disciplinary hearing was conducted by McInerney on August 28, 2002, McInerney's last official day of work for the Town

19. By letter from McInerney dated August 30, 2002, Antonellis was notified he had been demoted from Fire Chief to the rank of Firefighter based on McInerney's conclusion that Antonellis had engaged in improper conduct.

20. This aforementioned disciplinary action was knowingly undertaken during the period in which Antonellis remained disabled.

## COUNT ONE - ADA - 42 U. S. C. 12101, et seq.

21. The plaintiff realleges paragraphs 1-20 in their entirety

22. McInerney possessed substantial ill will toward Antonellis and the disciplinary actions he initiated against Antonellis were undertaken to provide the Town with a legal pretext to substantiate its foreordained decision to impose discipline on Antonellis with the wrongful intent of discriminating against him because of his documented disability.

23. McInerney was only interested in utilizing his official position under the color of state law for the purpose of intentionally injuring Antonellis. This assertion is substantiated by Town Warrant Advisory member, Sue Bartlett, who stated that McInerney told her "that *asshole* Antonellis will never step foot in this building again as long as I am Town Manager."

24. The documented evidence clearly establishes that McInerney scheduled Antonellis' disciplinary hearing on August 12, 2002, only after the Essex Regional Retirement Board ruled on July 24, 2002 against the Town's request to involuntary retire Antonellis.

25. The documented evidence further establishes that when McInerney scheduled Antonellis' disciplinary hearing on August 12, 2002, he had not even received Attorney Corbo's report discussing the results of her investigation into Antonellis' conduct because this report was not even prepared and submitted until August 13, 2002.

26. Although the Town possessed written confirmation from Antonellis' physician that he could return to transitional light duty work, at no time did the Town make any effort whatsoever to provide Antonellis with reasonable accommodations so that he could perform the essential functions of his employment. In fact, at no time did the Town even undertake to identify the precise limitations resulting from Antonellis' disability and the potential reasonable accommodations that could overcome those limitations.

27. The aforementioned conduct of the Town and its employees violated Antonellis' rights as enunciated in 42 U. S. C. 12101, et seq..

## COUNT TWO - MASSACHUSETTS GENERAL LAWS CHAPTER 151B

28. The plaintiff realleges paragraphs 1-27 in their entirety.

29. The aforementioned conduct of the Town and its employees violated Antonellis' rights as enunciated in Mass. Gen. L. c. 151B.

## COUNT THREE - INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

30. The plaintiff realleges paragraphs 1-29 in their entirety.

31. The defendants' conduct toward Antonellis was extreme and outrageous and caused Antonellis to suffer emotional distress.

32. The defendants intended to, or had a reckless disregard of the probability of causing Antonellis emotional distress.

33. As a direct and proximate result of the defendants' extreme and outrageous conduct, Antonellis suffered extreme emotional distress.

## COUNT FOUR - NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

34. The plaintiff realleges paragraphs 1-33 in their entirety.

35. The defendants' conduct toward Antonellis was extreme and outrageous and caused Antonellis to suffer emotional distress.

36. The defendants intended to, or had a reckless disregard of the probability of causing Antonellis emotional distress.

37. As a direct and proximate result of the defendants' extreme and outrageous conduct, Antonellis suffered extreme emotional distress evidenced by a physical symptomology.

**WHEREFORE**, the plaintiff requests the following relief:

1. Pursuant to Count One, judgment against the defendants, jointly severally, in an amount to be determined by this Court, plus interest, costs, and attorney's fees.

2. Pursuant to Count Two, judgment against the defendants, jointly severally, in an amount to be determined by this Court, plus interest, costs, and attorney's fees.

3. Pursuant to Count Three, judgment against the defendants, jointly severally, in an amount to be determined by this Court, plus interest and costs.

3. Pursuant to Count Four, judgment against the defendants, jointly severally, in an amount to be determined by this Court, plus interest and costs.

**PLAINTIFF REQUESTS A TRIAL BY JURY**

                                            Respectfully submitted,
                                            **Paul Antonellis**
                                            By his attorney,

                                            _/s/ Robert W. Walker_
                                            Robert W. Walker
                                            BBO # 541981
                                            Walker & Associates
                                            96 Commonwealth Avenue
                                            Concord, Massachusetts 01742
                                            (978) 371-9222
                                            Dated: July 28, 2004